UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS R. JENSEN,

        Petitioner,

v.                                       CASE NO. 06-11605
                                       HONORABLE BERNARD A. FRIEDMAN

KENNETH ROMANOWSKI,

        Respondent.
_____/

**<u>OPINION AND ORDER GRANTING THE WRIT OF HABEAS CORPUS</u>**

Petitioner Dennis R. Jensen has filed a *pro se* petition for the writ of habeas corpus. The habeas petition challenges Petitioner's state convictions for first-degree home invasion and second-degree criminal sexual conduct. Petitioner alleges that the trial court's rulings deprived him of due process, a fair trial, and his right to present a defense. Respondent Kenneth Romanowski urges the Court through counsel to dismiss the habeas petition on the grounds that Petitioner's claims lack merit and were not exhausted as federal constitutional issues in state court. The Court has concluded that Petitioner satisfied the exhaustion requirement, that the trial court violated Petitioner's constitutional right to confront witnesses, and that the error was not harmless. Therefore, the habeas petition will be granted.

**I. Background**

    **A. The Trial and Sentence**

Petitioner was charged in Mason County, Michigan with first-degree home invasion and second-degree criminal sexual conduct. The state court summarized the facts and the testimony at trial as follows:

The complainant, who was twelve years old at the time of trial, testified that she knew defendant as her landlord. When the complainant was home alone on July 29, 2000, defendant came to her residence and asked if he could use the bathroom. He entered the residence and walked to the bathroom, then said that he had to retrieve something from his car. Defendant returned to the apartment and asked the complainant if she wanted to dance. The complainant said no. Defendant pulled the complainant toward him, then put one of his hands on her shoulder and the other on her hips, and they swayed back and forth. She got away from him, but he eventually got her in a place where she could not get away. Defendant kissed her, then put his hand on and rubbed her "private part between [her] legs" and brought his hand up to her breast. Defendant told the complainant that she was cute and "It's our little secret," before leaving the complainant's home.

Notably, the complainant testified at trial that, prior to the alleged incident, she went downstairs to the living room and saw "someone" walking out the door and then she eventually heard a knock, opened the door, and found defendant there. In contrast, Detective Susan Randall testified that the complainant had said that, when she left the bathroom, defendant was standing in her living room.

Defendant testified, in short, that he went to the residence where the complainant and her family lived on July 29, 2000, but that he never entered the residence that day. He testified that he was never alone in the house with the complainant that morning. Defendant also expressly denied touching the complainant inappropriately. Defendant testified that he gave the complainant's family at least three warnings about not paying the full amount of rent that they owed. Defendant said that he "had the documents completed," to begin eviction proceedings against complainant's family for non-payment of rent and that he showed them to the complainant's stepfather on July 27, 2000. In contrast, the complainant's stepfather testified that defendant only verbally warned him once about being evicted if they did not get caught up in their rent.

Detective Randall testified that she prepared an envelope that appeared to be addressed to the Ludington Police Department and placed "tell-tell powder" inside it, took it to the complainant's residence, and left the envelope on the kitchen table. She also testified that defendant, who had "purple tell-tell powder" in his nail beds, admitted to her during an interview that he went into the apartment and opened the envelope. Detective Randall further testified that defendant denied having been alone with the complainant in her residence when she first asked him. However, he later acknowledged being alone with the complainant a few times and said that one time he gave her a hug because he thought she was upset. Defendant also acknowledged that he was not supposed to

2

> be there when the complainant was home alone. In his testimony, defendant
> acknowledged opening the envelope in question. He said that he was at the
> residence to collect the rent and that he was "really, really, curious" when he saw
> the envelope.

*People v. Jensen*, No. 235372, at 1-2 (Mich. Ct. App. Sept. 9, 2003). On January 19, 2001, a circuit court jury found Petitioner guilty, as charged, of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(1)(a) (sexual contact with a person under thirteen years of age). On February 20, 2001, the trial court sentenced Petitioner to concurrent terms of five to twenty years for the home invasion and thirty-eight months (three years, two months) to fifteen years for the criminal sexual conduct.

### B. Direct Appeal and Habeas Petition

Petitioner raised his habeas claims on direct appeal from his convictions. A three-judge panel of the Michigan Court of Appeals initially reversed Petitioner's convictions and remanded the case for a new trial. The judges held that Petitioner's right of confrontation was violated by a police officer's testimony regarding allegations that Petitioner inappropriately touched a girl in 1989. The court of appeals concluded that the error was not harmless. *See People v. Jensen,* No. 235372 (Mich. Ct. App. Sept. 9, 2003) (unpublished). The prosecutor argued in a motion for rehearing that Petitioner's own admissions and evidence of the prior conviction were sufficient to overcome the taint of the police officer's improper testimony. Judge Karen M. Fort Hood voted to deny the prosecutor's motion, but the two-judge majority granted the motion and vacated the court's prior opinion. *See People v. Jensen*, No. 235372 (Mich. Ct. App. Nov. 6, 2003).

In a subsequent opinion, the two-judge majority held that the Confrontation Clause was

3

violated by the admission of the prior complainant's comments to the police officer, but that the error was harmless. The majority also stated that the trial court did not err in admitting evidence of the prior conviction or in ruling that evidence of Petitioner's sexual contact with his son's underage girlfriend was admissible. Judge Karen Fort Hood wrote a dissenting opinion in which she stated that the violation of the Confrontation Clause was not harmless error. *See People v. Jensen*, No. 235372 (Mich. Ct. App. Nov. 9, 2004).

Petitioner appealed to the Michigan Supreme Court, but the State's high court denied leave to appeal on March 31, 2005, because it was not persuaded to review the issues. *See People v. Jenkins*, 472 Mich. 882; 693 N.W.2d 823 (2005) (table). Justices Michael F. Cavanagh and Marilyn Kelly voted to grant leave to appeal.

Petitioner filed his habeas corpus petition on April 4, 2006. He alleges that the trial court: (1) erroneously admitted evidence of his prior conviction for fourth-degree criminal sexual conduct; (2) violated his right to confront and cross-examine witnesses; and (3) deprived him of his right to present a defense.

## II. The Exhaustion Defense

One of Respondent's defenses is that Petitioner failed to exhaust state remedies for all his claims. The doctrine of exhaustion of state remedies requires state prisoners to "fairly present" their claims in state court before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

> A petitioner need not cite "chapter and verse" of constitutional law, *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir.1987), but "[g]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated." *McMeans* [*v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)] (citing *Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2nd Cir.1984)).

4

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). It is sufficient if the petitioner asserted the substance of his claims in state court. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005). There are four actions a petitioner can take to "fairly present" his claims in state court:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans v. Brigano*, 228 F.3d at 681 (citing *Franklin v. Rose*, 811 F.2d at 326).

Respondent maintains that Petitioner failed to raise his first and third claims as federal constitutional issues in state court. Petitioner presented his first claim regarding evidence of his prior conviction to the state court primarily as a state law question. He relied on state decisions and the Michigan Rules of Evidence as support for his claims. However, he also cited the Fourteenth Amendment to the United States Constitution and *Lisenba v. Califoirnia*, 314 U.S. 219 (1941), for the proposition that the due process guarantee of the federal constitution requires fundamental fairness in the use of evidence against a criminal defendant.[1] Additionally, Petitioner cited *United States v. Ailstock*, 546 F.2d 1285 (6th Cir. 1976), a case in which the Sixth Circuit Court of Appeals held that evidence of the defendant's past imprisonment was

---

[1] The Supreme Court stated in *Lisenba*:

> As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

*Lisenba*, 314 U.S. at 236.

inadmissible and was not harmless error.

The references to the Fourteenth Amendment and to *Lisenba*, as well as, the argument that Petitioner was entitled to due process and fundamental fairness in the use of evidence were sufficient means to alert the state court that Petitioner was alleging a denial of his constitutional rights. The Court therefore deems Petitioner's first claim exhausted as a federal constitutional issue.

Petitioner's third habeas claim concerning the alleged denial of the right to present a defense also was presented to the state court primarily under state law. At the conclusion of his discussion, however, Petitioner cited the Fourteenth Amendment to the United States Constitution and *Bennett v. Scroggy*, 793 F.2d 772 (6th Cir. 1986). In *Bennett,* the Sixth Circuit held that the trial court's refusal to adjourn the habeas petitioner's trial so that he could secure the attendance of a witness effectively denied him an opportunity to present his only defense. The Sixth Circuit held that the petitioner's rights under the Sixth and Fourteenth Amendment were violated. Petitioner's reliance on *Bennett*, which is a federal habeas case employing constitutional analysis, and the fact that he styled his claim in terms of the denial of the right to present a defense, constituted "fairly presentation" of his claim to the state court.

The Court concludes that Petitioner exhausted state remedies for all his claims. The Court will proceed to address the substance of Petitioner's claims, using the following standard of review.

**III. Standard of Review**

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's

adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involve/d an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly

deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). In addition, "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

**IV. Discussion**

    **A. Propensity Evidence**

Petitioner alleges that the trial court erroneously admitted evidence of his prior conviction for fourth-degree criminal sexual conduct. Petitioner asserts that the prior incident of criminal sexual conduct occurred eleven years before the incident for which he was being tried and that there was no correlation between the two offenses. He claims that the prosecutor improperly used the prior incident to show propensity to commit the current offense.

Petitioner's claim lacks merit because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003).[2] Because there is no Supreme Court

---

[2] The Sixth Circuit re-affirmed its ruling in *Bugh v. Mitchell* last year and stated that a challenge to the trial court's admission of "other acts" evidence under a state's rules of evidence "does not provide a cognizable basis for granting habeas relief." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007), *cert. denied*, __ S.Ct. __, No. 07-8411, 2008 WL 754363 (U.S. Mar. 24, 2008).

8

decision holding that the admission of "other acts" evidence violates the Constitution, the state court's conclusion that the evidence was admissible cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). *Id*. at 513.

### B. The Right to Confront Witnesses

The details of Petitioner's prior conviction for fourth-degree criminal sexual conduct were admitted in evidence through the testimony of Lieutenant Ronald Wolter of the Michigan State Police. Lieutenant Wolter

> testified on direct examination that he had previously been a road trooper employed at the Newaygo post of the state police. In that capacity, he investigated a prior complaint of criminal sexual contact that was allegedly perpetrated by [Petitioner]. In particular, Lieutenant Wolter testified that he received a complaint from a female who was thirteen-years-old or younger, who described contact involving the fondling of the chest and buttocks area. He further testified that the victim in that case was a neighbor of [Petitioner's] and that she described the fondling as being nonconsensual. Lieutenant Wolter also testified that there was no report of an adult being present at the time and that the victim in the prior case said she was fondled above her clothing. The victim said that [Petitioner] told her, "You have a nice butt." Lieutenant Wolter believed that [Petitioner] was convicted by guilty plea of CSC IV based on that prior incident. However, the judgment of sentence for this prior conviction indicated that [Petitioner] pleaded no contest to the charge.

*Jensen*, Mich. Ct. App. No. 235372, at 2 (Sept. 9, 2003).

Petitioner alleges that the prosecution should have attempted to produce the victim of the prior offense or at least a witness to the offense. He contends that the failure to do so violated his constitutional right to confront and cross-examine the witnesses against him. The Michigan Court of Appeals agreed with Petitioner that his right to confront witnesses was violated by Lieutenant Wolter's testimony about the prior victim's comments.

9

### 1. The Confrontation Clause

The Confrontation Clause of the Sixth Amendment applies to state court proceedings. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). It provides a criminal defendant with "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *see also Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (explaining that "'[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination'") (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)).

"Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Statements are "testimonial" when taken during the course of police interrogations and "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

### 2. Application

Lieutenant Wolter testified at Petitioner's trial that the complainant in the 1989 case informed him that Petitioner fondled her chest and buttocks against her will. Lieutenant Wolter went on to say that Petitioner had entered a plea in that case and had been convicted of fourth-degree criminal sexual conduct. (Tr. Jan. 17, 2001, at 316-21.) The 1989 complainant's comments to Lieutenant Wolter were testimonial evidence under *Crawford* and *Davis* because the comments were made during a police interrogation, the purpose of which was to establish or

prove an event that was relevant to a subsequent prosecution. The comments were inadmissible because Petitioner apparently had no prior opportunity to confront and cross-examine the 1989 complainant.[3]

### 3. Harmless Error

The Michigan Court of Appeals initially stated that, although Petitioner's right to confront witnesses was violated by Lieutenant Wolter's testimony concerning the 1989 complainant's comments, the error was not harmless. On rehearing, the court of appeals concluded that the error was harmless beyond a reasonable doubt.

Confrontation Clause errors are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). The test on habeas review of constitutional errors is whether the error had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This assessment of the prejudicial impact of constitutional error in a state-court criminal trial applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*, 386 U.S. 18 (1967)]." *Fry v. Pliler*, __ U.S. __, __, 127 S. Ct. 2321, 2328 (2007).

Factors to be considered in determining whether a Confrontation Clause error was harmless under *Brecht* include: "(1) 'the importance of the witness' testimony in the

---

[3] The record before the Court includes transcripts for the arraignment, pretrial conference, no-contest plea, and sentence for the prior offense. None of those proceedings included an opportunity for cross-examination of the victim in the prior offense.

prosecution's case,' (2) 'whether the testimony was cumulative,' (3) 'the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,' (4) 'the extent of cross-examination otherwise permitted,' and (5) 'the overall strength of the prosecution's case.'" *Vasquez v. Jones*, 496 F.3d 564, 574 & 574 n.8 (6th Cir. 2007) (quoting *Delaware v. Van Arsdall*, 475 U.S. at 684). "If the matter is so evenly balanced that this Court has grave doubt as to the harmlessness of the error, it should treat the error, not as if it were harmless, but as if it affected the verdict (*i.e.*, as if it had a substantial and injurious effect or influence in determining the jury's verdict)." *Id*. at 575 (quotation marks omitted) (quoting *Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1994)).

### a. The Importance of the Disputed Evidence

Lieutenant Wolter's testimony about the prior victim's comments to him were an important part of the prosecution's case. The prosecutor stressed the similarity of the two cases in his closing argument, and he used the evidence to show that Petitioner had a method or scheme of having contact with young girls. The prosecutor pointed out that Petitioner knew both victims, that the victims were approximately the same age, and that, in both cases, there were no other adults around at the time of the alleged sexual conduct. The prosecutor also pointed out that, in both cases, Petitioner touched the girls' breasts over their clothing and he commented on the girls' physical appearance. He told the first victim that she had a "nice butt," and he told the second victim that she was cute. Petitioner allegedly touched the victim's buttocks in the 1989 incident, and in the current case, he touched the area between the girl's legs. (Tr. Jan. 19, 2001, at 613-14, 651.)

12

Petitioner admitted to Detective Randall that he had a prior conviction for criminal sexual conduct, but he did not provide Randall with specific details about the case. The details of the 1989 offense were provided by Lieutenant Wolter, who testified about the 1989 victim's comments to him. It was the victim's description of the prior offense that proved so damaging to Petitioner's case, because the details of the prior offense were similar to the current offense. Although the trial court charged the jurors not to use evidence of the prior offense to conclude that Petitioner was a bad person or likely to commit crimes, the court did say that the jurors could consider whether the evidence tended to show that Petitioner implemented a plan or characteristic scheme. (*Id*. at 663-64.) The jury could have concluded that Petitioner must be guilty of the charged offense because he acted similarly in 1989.

### b. Cumulative

The prior victim's comments were not cumulative to other evidence in the case. Although there was evidence that Petitioner had a prior conviction for criminal sexual conduct, the description of the prior offense came solely from Lieutenant Wolter's testimony regarding the victim's comments.

### c. Corroborating or Conflicting Evidence

Petitioner informed Detective Randall that he engaged in the conduct for which he was convicted in the 1989 case. He also testified that he pleaded guilty to the offense and that he was guilty of the offense. (Tr. Jan. 18, 2001, at 498 and 526.) Thus, there was evidence corroborating the prior conviction, but there was no evidence corroborating the details of the offense.

13

#### d. Other Opportunity to Cross-Examine

As noted above, there apparently was no other opportunity to cross-examine the prior victim. *See infra* n. 2.

#### e. Strength of the Prosecution's Case

The prosecution's case was substantial, but not overwhelming. There was no physical evidence in the form of fingerprints, bruises, or hair fibers. Petitioner did admit to Detective Randall and to the jury that he had been convicted of fourth-degree criminal sexual conduct and that he did a lot of things about which the police did not know. He also informed Lieutenant Wolter in 1989 that he was undergoing psychological treatment, that he had deep sexual feelings for young girls, and that he had problems controlling his behavior. (Tr. Jan. 17, 2001, at 320.) These were damaging admissions, but they were indicative of a character trait, not guilt in the current case.

Petitioner informed Lieutenant Wolter that any touching during the 1989 incident was unintentional (*id*. at 319), and he testified that he was under the influence of intoxicants when that incident occurred. (Tr. Jan. 18, 2001, at 541.) Furthermore, there were no witnesses to the charged conduct, and the case was virtually a credibility contest between Petitioner and the complaining witness. Although Petitioner initially lied to the police about ever entering the complainant's home or being alone with her, he testified at trial that he did not go in the house on the day in question and that he was not alone with the complainant that morning. (*Id*. at 504-05.) He denied touching the complainant's breasts and the area between her legs, and he claimed that the complainant made up stories. He and defense counsel intimated that the complainant

14

falsely accused him because he had threatened to evict the family from their apartment.[4]

### f. Conclusion

The prior victim's comments tended to bolster the testimony of the current complainant. "This potential bolstering weighs against finding harmless error." *Vasquez v. Jones*, 496 F.3d at 576. The Court therefore believes that the prior victim's comments that Petitioner fondled her breasts and buttocks in 1989 could have had a "substantial and injurious effect or influence" on the jury's verdict. Because the Court has a grave doubt about the harmlessness of the error under the Confrontation Clause, the error must be deemed not harmless, and Petitioner must win. *O'Neal v. McAnich*, 513 U.S. at 436. Petitioner is entitled to the writ of habeas corpus on the basis of his second claim.

### C. Violation of the Right to Present a Defense

Defense counsel wanted to produce Petitioner's son and another person, who had known Petitioner for a long time, as character witnesses. The witnesses were expected to testify that Petitioner was a truthful person. In the jury's absence, the prosecutor asked the trial court for permission to cross-examine the prospective defense witnesses as to whether Petitioner had told them that he had a sexual encounter with his son's underage girlfriend. The trial court ruled that the prosecutor could ask the question if the witnesses testified. In light of the trial court's ruling, defense counsel chose not to present the witnesses. (Tr. Jan. 18, 2001, at 560.) Petitioner

---

[4] The complainant's stepfather admitted that Petitioner had threatened to begin eviction procedures if the stepfather and the complainant's mother did not pay the rent. (Tr. Jan. 17, 2001, at 299-300.) Although the actual eviction papers were served on the family after criminal charges were filed against Petitioner, Petitioner testified that he thought that he had prepared and sent the documents before then. (Tr. Jan. 18, 2001, at 428-29 and 524-26.)

15

contends that the trial court's ruling violated his right to present a defense.

### 1. Legal Framework

A defendant in a criminal trial possesses "the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973). "[T]he right . . . to call one's own witnesses is fundamental to a defendant's due process rights." *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir.) (citing *Chambers,* 410 U.S. at 294), *cert. denied*, __ U.S. __, 127 S. Ct. 589 (2006).

However, "[a] defendant's right to present a 'complete' defense . . . does not automatically trump state evidentiary rules. The competing interests must be balanced, and 'a defendant's interest in presenting . . . evidence may [have to] bow to accommodate other legitimate interests in the criminal trial process.'" *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). In other words, the right to present a defense is not absolute. *Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007).

> While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury . . . . [T]he Constitution permits judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.' "

*Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (citations omitted); *see also Scheffer*, 523 U.S. at 308 (stating that the exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused").

## 2. Application

In Michigan testimony regarding a person's reputation is admissible, but "[o]n cross-examination, inquiry is allowable into reports of relevant specific instances of conduct." Mich. R. Evid. 405(a). The trial court stated that the prosecutor's question fell within the standard right to impeach and that cross examination was not limited to the characteristic for truthfulness. The trial court also said that the prosecutor had reasonably broad discretion to question defense witnesses about whether Petitioner was as wonderful as they portrayed him to be. (Tr. Jan. 18, 2001, at 422-26.)

The trial court's decision to permit the prosecutor to challenge the testimony of prospective defense witnesses did not deprive Petitioner of the opportunity to present his defense. He was able to explain his version of the facts when he testified, and he produced a witness who testified that she had a poor opinion of the complainant's stepfather, who testified for the prosecution. Petitioner also was not prevented from producing his son and a third person as witnesses. The fact that the prosecutor intended to ask the character witnesses about Petitioner's failure to disclose certain information to them was one of the risks that he would have faced by presenting character evidence.

Furthermore, the trial court's ruling served the legitimate purpose of portraying a balanced view of Petitioner's character and of allowing inquiry under Rule 405(a). As explained by the Michigan Court of Appeals,

> [b]ecause defendant was seeking to offer testimony that defendant was a truthful person, the trial court properly ruled that the prosecution could offer evidence of specific instances of conduct that would rebut this testimony. *People v. Lukity*, 460 Mich. 484, 498-499; 596 N.W.2d 607 (1999). Contrary to defendant's assertion, the prosecution's proposed evidence, that for many years defendant had

17

>concealed from his son the fact that he (defendant) had had a sexual liaison with his son's underage girlfriend, would directly rebut the son's testimony that defendant was a truthful person.

*Jensen*, No. 235372, at 4 (Mich. Ct. App. Nov. 9, 2004).

The trial court's decision was a judgment call and was well within the court's discretion to make. *Cf. Rockwell v. Yukins*, 341 F.3d at 514 (concluding that the exclusion of evidence that the victim mistreated his sons was a judgment call that did not result in an objectively unreasonable application of clearly established federal law as determined by the Supreme Court). Therefore, the state appellate's holding -- that the trial court did not err in ruling that the evidence would be admissible -- was objectively reasonable. Petitioner has no right to relief on the basis of his third and final claim.

## V. Conclusion

The state appellate court's harmless-error analysis of Petitioner's claim under the Confrontation Clause resulted in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the habeas corpus petition is conditionally GRANTED on Petitioner's second claim. The State shall release Petitioner unless it takes steps to retry him within **ninety (90) days** of the date of this opinion. The Court declines to grant relief on Petitioner's first and third claims.

s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: **April 29, 2008**